UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MAINE

| | |
|---|---|
| **THE INTERNATIONAL ASSOCIATION OF** ) <br> **MACHINISTS AND AEROSPACE WORKERS,**) <br> **AFL-CIO, LOCAL LODGE NO. 1821**, on behalf ) <br> of its individual members employed at the ) <br> Bucksport Paper Mill; **RICHARD GILLEY,** ) <br> individually and as IAMAW District 4 Business ) <br> Representative for Local Lodge No.1821; ) <br> **COREY DARVEAU,** individually and as ) <br> President of Local Lodge No. 1821; ) <br> **BRIAN SIMPSON,** individually and as Vice ) <br> President of Local Lodge No. 1821; ) <br> **BRIAN ABBOTT,** individually and as Recording ) <br> Secretary of Local Lodge No. 1821; ) <br> **HAROLD PORTER,** individually and as Financial ) <br> Secretary for Local Lodge 1821, and ) <br> **FIFTY-THREE LOCAL NO. 1821 MEMBERS,** ) <br> Individually and for all other similarly situated ) <br> Salaried and hourly wage employees, ) <br>           Plaintiffs, ) <br> v. ) <br> ) <br> **VERSO PAPER CORP.,** a Delaware Corporation; ) <br> **VERSO PAPER LLC**, a Delaware Limited ) <br> Liability Company (LLC) and a wholly owned ) <br> subsidiary of Verso Paper Corp., ) <br> ) <br> **AIM DEVELOPMENT (USA) LLC**, a ) <br> Delaware Limited Liability Company and indirect ) <br> wholly-owned subsidiary of American Iron & ) <br> Metal Company, Inc., ) <br> _____Defendants._____ \_\_\_\_) | CIVIL ACTION NO. <br> 1:14-CV-00530-JAW |

**PLAINTIFFS' MOTION FOR RECONSIDERATION, CERTIFICATION
TO THE MAINE SUPREME JUDICIAL COURT, OR
CERTIFICATION OF APPEAL FOR INTERLOCUTORY REVIEW
OF THE SEVERANCE PAY CLAIMS IN COUNT 9**

Plaintiffs, pursuant to Fed.R.Civ. P. 54(b) and 60 and D.Me. Local.R. 7, request reconsideration of the Court's dismissal of their severance pay claims from Court 9 of the First Amended Complaint.  Specifically, the Plaintiffs request that the Court reconsider its decision not to certify the State law questions relating to the proper interpretation of 26 M.R.S.A. § 625-B, and determination, on primarily "public policy" grounds, that the filing of a Director's action pursuant to 26 M.R.S.A. § 625-B, sub-§ 5 terminates the right of Plaintiffs, and similarly situated Bucksport employees, to maintain a prior-filed action brought pursuant to 26 M.R.S.A. § 625-B, sub-§ 4.   In the alternative, Plaintiffs move for certification of this matter for interlocutory appeal to the First Circuit Court of Appeals, pursuant to 28 U.S.C. § 1292(b).

Plaintiffs request that, rather than this Court attempting to interpret these provisions of Maine law, and attempt to determine the intent of the Maine Legislature, based on an incomplete submission of the legislative history of amendments to 26 M.R.S.A. § 625-B (as it has evolved since 1971), this Court should reconsider its January 6, 2015 Order dismissing the severance pay claims in Court 9, or vacate that order and certify all questions relating to the interpretation of 26 M.R.S.A § 625-B relevant to this case, to the Maine Supreme Judicial Court, sitting as the Law Court, pursuant to 4 M.R.S.A. § 57.[1]  In the alternative, Plaintiffs request certification of this matter on an interlocutory basis, pursuant to 28 U.S.C.A. § 1292(b).

As grounds therefor, Plaintiffs provide the following support:

**Footnotes 15 and 22 of the Court's January 6, 2015 Opinion**

At footnote 15 of the January 6, 2015 Opinion the Court notes as follows:

"Absent controlling state court precedent, a federal court sitting in diversity may certify a state law issue to the state's highest court, or undertake its prediction, 'when the [route] [the] state courts would take is reasonably clear.'" *Lyons v. Nat'l Car Rental Sys., Inc. (of Delaware)*, 30 F.3d 240, 245 (1st Cir. 1994) (quoting *Vanhaaren v. State Farm Mut. Auto. Ins. Co.*, 989 F.2d 1, 3 (1st Cir.

---

[1]  Plaintiffs do not seek reconsideration or certification for any purpose of the Court's decision to abstain from consideration of the 58 individual Plaintiffs' claims related to 26 M.R.S.A. § 626 in Count 9 of the First Amended

1993) (citation omitted)). However, here, the timeframe for a judicial decision is so narrow that certification is unrealistic.

At footnote 22 of the January 6, 2015 Opinion the Court notes as follows:

A strong argument could be made that the Court should have abstained from deciding the Maine severance pay law claim on precisely the same basis. In fact, the implications of Plaintiffs' arguments affect the authority of the Director and the Attorney General to act under a state statute, so there is even more of a compelling argument for abstention than in the vacation pay matter. However, Plaintiffs initiated this case in federal court and it was not brought to this Court by removal. Accordingly, if the Court abstained on the Maine severance pay law issue, its only option would have been to dismiss the claim and require Plaintiffs to file suit, if they chose, in state court. If that occurred, Plaintiffs properly made the point that they would be filing their state lawsuit after the Director had filed her lawsuit and under their own interpretation of subsection 5, they would have been precluded from filing suit. Accordingly, because in fairness to Plaintiffs, they deserved a decision on the merits, the Court has declined to abstain on the Maine severance pay law issue.

Opinion, p. 85.

The Court concluded its discussion on the plain meaning of the statute, prior precedents and the relevance of the FLSA on its interpretation of legislative intent by stating that:

Juxtaposing the *Breuer* interpretation of similar language in the FLSA against [the] judicial opinions [*Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 5 n.2 (1987); *Director of Bureau of Labor Standards v. Fort Halifax Packing Co.*, 510 A.2d 1054, 1057 (Me. 1986); *Viking Freight, Inc. v. Moberg*, 1998 WL 35155724, at *16-17 (Me. Super. July 27, 1998)[2]] *the legislative intent behind section 625-B remains ambiguous.*

Opinion, p. 9.

Accordingly, certification to the Maine Supreme Judicial Court, sitting as the Law Court, is appropriate in this case, in the absence of any post-*Breuer*,[3] definitive precedent from the Maine Supreme Judicial Court, sitting as the Law Court, regarding:

(i) Whether the filing of a Director's action pursuant to 26 M.R.S.A. § 625-B, sub-§ 5, terminates a pending prior-filed action maintained by a labor

---

[2] A decision in which the trial judge misquoted the statute in reaching her conclusion that pending actions were terminated, stating subsection 5 terminated the right to "maintain" and action, when the statute says "bring" and action.

[3] *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003).

organization on behalf of its members or by employees on behalf of themselves, or all other similarly situated employees, pursuant to subsection 4;

(ii) Whether the Maine Legislature intended the right to bring and maintain actions provided in 26 M.R.S.A. § 625-B, sub-§§ 4 and 5 to be interpreted consistently with virtually identical provisions in the federal Fair Labor Standards Act (FLSA) and Age Discrimination in Employment Act (ADEA);

(iii) Whether the Maine Legislature intend the mitigation of liability described in 26 M.R.S.A. § 625-B, sub-§ 3(B) to require actual payment of severance "under the terms of" an express agreement, in an amount equal to or greater than the amount mandated in subsection 2, within one regular pay period after the employees' last full day of work or sooner; and

(iv) Whether the "last full day of work" is the last day physically worked or whether an employee can defer the triggering of the time for payment of severance by paying gratuitous remuneration to employees after they no longer have the ability or right to work at the facility.

(v) Whether the Maine Legislature has determined that payment of attorneys' fees and costs mandated in 26 M.R.S.A. § 625-B, sub-§ 4, is contrary to public policy if paid to litigants in a prior-filed subsection 4 case, after a Director's action has been filed or such fees are consistent with encouraging private enforcement of the MSPA.

Based on a record in this Court that only included the legislative history of the 1975 and 2003 amendments to 26 M.R.S.A. § 625-B, the Court relied on a "public policy" analysis of the statute to determine the Maine Legislature's intent in enacting and amending the Maine Severance Pay Act (MSPA). Significantly, the Court's public policy discussion does not cite public policy statements from members of the Maine Legislature in floor debates regarding the relative merit of the competing public policy implications and choices to be weighed when enacting this legislation regarding the right to maintain pending private litigation and obtain attorneys' fees in prior-filed subsection 4 actions, upon the filing of a Director's subsection 5 action. Rather, the Court expresses *its own view* of the relative merit of various public policy choices, stating specifically that:

> *By this Court's reckoning*, the balance of policy considerations in favor of interpreting the Maine severance pay law to include pending

employee/union lawsuits in the termination provision of subsection 5 weighs strongly in favor of Verso's view. This does not mean that the policy considerations necessarily carry the day. *The Maine Legislature in its wisdom is free to enact laws on behalf of the people of Maine that seem to this Court in its best judgment to be markedly ill-advised.* Nevertheless, where the benefits of Plaintiffs' interpretation of a law are so elusive, the drawbacks are so obvious, and the advantages of the Verso interpretation so apparent, *the Court factors these policy considerations into its statutory analysis in substantial support of Verso's position.*

Opinion, p. 80 (emphasis supplied).

However, as the Maine Supreme Judicial Court noted in *Shapiro Bros. Shoe Co., Inc. v. Lewiston-Auburn Shoeworkers Protective Ass'n*, 320 A.2d 247, 257 (Me. 1974) – a decision which led to the very clarification of Maine law that amended the statute in 1975 to include 26 M.R.S.A. § 625-B, sub-§§ 4 and 5 (including the right of labor organizations to bring an action on behalf of their members) – "It is not our duty to sit in judgment as to the efficacy or wisdom of the statute." *Id*., citing, *Baxter v. Waterville Sewerage Dist.,* 146 Me. 211, 79 A.2d 585 (1951).

4 M.R.S.A. § 57 provides in relevant part that:

When it appears to the Supreme Court of the United States, or to any court of appeals or district court of the United States, that there is involved in any proceeding before it one or more questions of law of this State, which may be determinative of the cause, and there are no clear controlling precedents in the decisions of the Supreme Judicial Court, such federal court may certify any such questions of law of this State to the Supreme Judicial Court for instructions concerning such questions of state law, which certificate the Supreme Judicial Court sitting as the Law Court may, by written opinion, answer.

Although this Court refused to apply federal case law interpreting virtually identical Fair Labor Standards Act (FLSA) and Age Discrimination in Employment Act (ADEA) statutory language (including *Breuer*) on the ground that the FLSA involves small amounts of money usually and *in the aggregate* here recovery will be in the millions, it is likely a state court will conclude the FLSA does apply and under the FLSA (which would not terminate a pending

action), intervention in an action filed by the Secretary is not permitted – a line of cases Verso

will no doubt raise to oppose intervention by Plaintiffs in the Verso-State action now.  See, e.g.

*Marshall v. U.S. Postal Service*, 481 F.Supp. 179 (D.C.D.C. 1979) (Section 16(c) of the Fair

Labor Standards Act, which empowers the Secretary of Labor to bring suit against an employer

to recover for employees' unpaid minimum wages or unpaid overtime compensation plus an

equal amount of liquidated damages, bars any intervention by private parties in the Secretary's

suit).

Thus, Plaintiffs request that this Court reconsider and vacate its determination that "the

timeframe for a judicial decision is so narrow that certification [to the Maine Supreme Judicial

Court, sitting as the Law Court] is unrealistic" – since the Court has left the Plaintiffs with no

ability to enforce their right to timely payment of severance in State or federal court now – even

though, under the terms of the State's settlement the Plaintiffs may not receive at least half of

their statutorily mandated severance pay until March 19.  Further, under the terms of the Court's

opinion and the operation of 26 M.R.S.A. § 625-B, sub-§ 5, Plaintiffs currently have no appellate

or judicial remedy to challenge the amount of payments that Verso has made to date, or will

make in the future, in the Director's action – because neither Plaintiffs nor any other of the

similarly situated employees adversely impacted by Verso's refusal to comply with MSPA

mandates are parties to the Director's subsection 5 action.

In *Dinan v. Alpha Networks Inc.*, 857 F.Supp.2d 162 (D. Me. 2012) (Woodcock, J.), this

Court concluded that:

> Certification of question to Maine Supreme Judicial Court was warranted,
> as to whether Maine's Timely and Full Payment of Wages Law, providing that
> employee leaving employment must be paid in full within reasonable time after
> demand, applied to reasonable value of employee's services under *quantum
> meruit*, such that *quantum meruit* award of reasonable value of employee's
> services constituted "wage" under Law, since Law seemed to implicitly
> contemplate that employer was able to calculate and pay earned wages in short

order, there were no issues of material fact in dispute and resolution of question would be determinative of cause, and there were no clear controlling precedents.

*Dinan v. Alpha Networks Inc.*, 857 F.Supp.2d at 163.

If certification is appropriate for such a unique and rare case, involving a single plaintiff, over a minor amount of money, surely certification is warranted here where the amount in controversy exceeds $30 million, the Plaintiffs and all similarly situated employees will be denied any other recourse in State or federal court now, and the precedential implications of this Court's interpretation of Maine law could have sweeping impacts on all future case – which sadly are not rare – in which a major employer relocates or closes a commercial or industrial facility employing 100 or more employees and in which – as the Court concedes – the amount in controversy is always in the millions of dollars because of the shear number of employees this law was enacted to protect.

## THE EVOLUTION OF 26 M.R.S.A. § 625-B

As further grounds for reconsideration, Plaintiffs submit that the complete legislative history of the Maine Severance Pay Statute (which is submitted with this filing), which, when viewed in its entirety, demonstrates an inexorable progression of deliberate legislative action and an unequivocal legislative intent to expand the rights provided to employees under this statute (including the right of employees and labor organizations that represent employees to privately enforce the MSPA). Nothing in the complete legislative history of the MSPA supports the Court's determination that it is in the public interest to: (i) limit, restrict or terminate employees' rights to maintain a prior-filed subsection 4 action to obtain severance after a Director's action is filed; (ii) to provide a mechanism through negotiation by the Director to alter or defer the express rights to obtain severance payments in a statutorily mandated time and amount; (iii) discourage private actions in favor of public enforcement of the MSPA by the Director by terminating a prior-filed private action and denying attorneys' fees and costs to litigants that have brought and

maintained a prior-filed action; or (iv) penalize private litigants who file an action to enforce employees' rights under the MSPA, rather than wait to see if the State taxpayers will fund such litigation through the filing of a Director's action.

Indeed, the legislative history of the MSPA evidences an express legislative intent to prohibit negotiations by employers to pay any amount that is either less than or in a time frame later than the express requirements in the act.  In fact, over the past four decades the Maine Legislature has repeatedly amended the MSPA, with changes that include prohibiting negotiations for reductions, delays, or deferments of such severance payments by agreements between employees and employers and making the amount and time of payment a mandatory minimum requirement.

Attempts to lobby the legislature to allow employers to negotiate with employees to receive a lesser amount or an amount at a later time than required by the act were expressly rejected by the Legislature – time and again – in favor of more explicit statutory terms that established a minimum amount of severance (that the Legislature knew required payment of sums in the millions of dollars to displaced workers), and instead the Legislature made the public policy choice to establish a very specific and limited time within which to pay the severance mandated.

Thus, the Director's purported authority to negotiate a different severance payment scheme than the time limit mandated by 26 M.R.S.A. § 625-B, sub-§ 2 -- that the court in its January 6, 2015 Order is so keen to protect, preserve and defend -- is simply not within the authority conferred on the Director (or Attorney General) in the MSPA.  Particularly where, as here, there is no threat of insolvency of the employer, but rather merely an employer who obdurately refuses to comply with the express amount and time requirements for payment of severance under Maine law -- while it closes its $1.4 billion merger deal and pays $8.4 million in

bonuses to its leadership -- there is no authority in the MSPA for deferring, reducing, or delaying compliance with the time and amount requirements in 26 M.R.S.A. § 625-B, sub-§ 2.

Indeed, the fact that the Legislature (in 1999) expressly removed the right of employers to negotiate a different amount or timing for such payments through the course of multiple amendments to this statute over the past four decades suggests that the Director exceeded her authority under the MSPA in fashioning the Consent Decree entered on December 23, 2014.

While the settlement negotiated by the Director was pragmatically preferable to the alternative of Verso leaving 520+ employees to starve and freeze for a Maine winter dependent on State assistance to survive, Verso still flagrantly violated the clear mandates of Maine law by refusing to timely pay the severance payment they conceded that they owe Instead they promised to  appeal any ruling requiring them to pay in accordance with the plain meaning of the law, succumbing to Verso's bully-tactics is not necessarily in the public's long-range interests. This Court's opinion will provide incentive for future employers to similarly refuse to pay severance using the same tactics and specious rationale.  More importantly, the authority to negotiate the deal the Director struck is simply not in the statute – the only reference to the ability to reduce an amount owed under the statute conferred on the Director is the requirement that the Director not collect the penalties provided in subsection 9 if to do so would impeded the ability of employees to collect the severance due them.  Otherwise, there is no right to negotiate a different amount or time for payment.

Specifically, the MSPA has evolved as follows:

The original version of the MSPA enacting in 1971, allowed for employers to contract to pay an amount of severance that is less than the statute mandated, and states as follows:

> Whenever a person, firm or corporation employing or more employees, is voluntarily going out of business, shall give one month's prior notice to his employees and failing to give such notice shall pay severance pay of one week for

each full year worked by the employee, but such severance pay shall not be more than one month's pay unless by contract the employer shall have agreed to pay a larger amount.  No severance pay shall be required to be paid to any employee who has worked for less than one year for the employer and no such severance pay shall be paid if the employee is discharged for a reasonable cause.  *An employer subject to this section may contract with his employees to pay such employees less than the severance pay required by this section.*

If a person, firm or corporation sells his business and there is no cessation of employment in the establishment, no such severance pay shall be required. The requirements of this section shall not apply to any person, firm or corporation employing employees in seasonal employment only.

P.L. 1971, ch. 452 (emphasis supplied).  Floor debate reveals that there was opposition to the concept of severance pay mandated by statute as being bad for business, with the view that unemployment compensation should be enough and that this was an undue burden on businesses that were choosing to close.  However, ultimately, the Legislature determined that public policy favored enactment of this bill.[4]

In 1973, the Act was again amended.[5]  This version of the MSPA limited the coverage to

---

[4] 1971
 P.L. 1971, ch. 452:
 http://lldc.mainelegislature.org/Open/Laws/1971/1971_PL_c452.pdf

105th LD 424:
http://lldc.mainelegislature.org/Open/LDs/105/105-LD-0424.pdf

Amendment that passed S-231:
http://lldc.mainelegislature.org/Open/LDs/105/105-LD-0424-CA_A_S231.pdf

Debate in the Legislative Record is linked below:
       Senate 6/3/1971 (see pages 3550-3553):
        http://lldc.mainelegislature.org/Open/LegRec/105/Senate/LegRec_1971-06-03_SP_p3541-3568.pdf

       House 6/10/1971 (see pages 3861-3866):
        http://lldc.mainelegislature.org/Open/LegRec/105/House/LegRec_1971-06-10_HP_p3843-3878.pdf
[5] 1973
 P.L. 1973, ch. 545:
 http://lldc.mainelegislature.org/Open/Laws/1973/1973_PL_c545.pdf

106th LD 308:
 http://lldc.mainelegislature.org/Open/LDs/106/106-LD-0308.pdf

106th ND 2012:
http://lldc.mainelegislature.org/Open/LDs/106/106-LD-2012.pdf
Debate in the Legislative Record is linked below:
       House 6/8/1973 (see page 3988):
        http://lldc.mainelegislature.org/Open/LegRec/106/House/LegRec_1973-06-08_HP_p3983-4012.pdf

employees who had been employed for at least 5 years or more and denied the right to severance

if the employer had a pension plan.

> **R. S., T. 26, § 625, amended.**   The 2nd paragraph of section 625 of Title 26 of
> the Revised Statutes, as enacted by chapter 452 of the Public Laws of 1971, is
> repealed and the following enacted in place thereof:

> Whenever a person, firm or corporation which employs or which has employed at
> any time during the preceding 12-month period 100 or more persons in anyone
> establishment or place of business, or the successors in interest of said person,
> firm or corporation, relocates or voluntarily quits that establishment or place of
> business in an area more than 150 miles from the present location, within or
> without the State of Maine, he shall pay to each employee at such establishment
> or place of business, an amount equal to the employees' gross weekly income at
> the time of relocation multiplied by the number of years the employee has been
> employed at said establishment or place of business. *No such payment shall be
> required to be paid if an employee has been employed for less than 5 years at said
> establishment or place of business or if the employer has a legally binding
> pension plan covering each employee.*

> Effective October 3, 1973 (emphasis supplied).

However, as the Court noted in footnote 18, after the Maine Supreme Judicial Court's

decision in in *Shapiro Brothers Shoe Co., Inc. v. Lewiston-Auburn Shop Workers Protective

Association,* 320 A.2d 247 (Me. 1974)."   The Maine Legislature's stated intent for enacting the

1975 amendments, which radically altered the form of the MSPA and which incorporated much

of its current basic form and content, was  "to clarify and make more explicit the provisions of

law regarding severance pay enacted by the 105th Legislature and modified by the 106th

Legislature, in the light of the decision of the Supreme Judicial Court in *Shapiro Shoe,* including

the adoption of the private right of action for employees and labor organizations in subsection 4

and the Director's cause of action in subsection 5." *Leg. History* at 2 (emphasis in original).

---

House 6/11/1973 (see pages 4092-4094):
http://lldc.mainelegislature.org/Open/LegRec/106/House/LegRec_1973-06-11_HP_p4039-4097.pdf

Senate 6/13/1973 (see page 4233):
http://lldc.mainelegislature.org/Open/LegRec/106/Senate/LegRec_1973-06-13_SP_p4227-4242.pdf

Senate 6/18/1973 (see pages 4432-4433):
http://lldc.mainelegislature.org/Open/LegRec/106/Senate/LegRec_1973-06-18_SP_p4426-4438.pdf

Although the Court in footnote 18 notes that the right of labor unions to maintain an action was adopted as part of the 1975 amendments,[6] the Court concludes that: "

> The 1975 amendment of the Maine severance pay law included a provision that explicitly allowed the union to maintain an action on behalf of affected employees. *Leg. History* at 2. This portion of the rationale for the 1975 amendments does not appear relevant to the issues before the Court in this lawsuit. The same is true of the amendments relating to mitigating the employer's liability for employees who accept a job from the same employer at a different location and for employees who had been employed at the employer for less than three years. *Id.* at 6.

ECF Doc. 73, at p. 70, n. 18.

However, Plaintiffs respectfully submit that the Legislature's radical alteration of the form of the MSPA and the repudiation of the Maine Supreme Court's determination in *Shapiro Shoe* that union's lacked standing to maintain an action on behalf of its members ignores the unequivocal expression of legislative intent to provide a right to severance pay to employees terminated as a consequence of a relocation or closure of a major employer.  While the Court may consider the public policy underlying this extension of the right to severance and the

---

[6]  1975

P.L. 1975, ch. 512:
http://lldc.mainelegislature.org/Open/Laws/1975/1975_PL_c512.pdf

107th LD 1362:
http://lldc.mainelegislature.org/Open/LDs/107/107-LD-1362.pdf

Amendment that passed H-674:
http://lldc.mainelegislature.org/Open/LDs/107/107-LD-1362-CA_A_H674.pdf

There is no debate in the Legislative Record for this bill.

P.L. 1975, ch. 717:
http://lldc.mainelegislature.org/Open/Laws/1975/1975_PL_c717.pdf

107th LD 2215:
http://lldc.mainelegislature.org/Open/LDs/107/107-LD-2215.pdf

107th ND 2332:
http://lldc.mainelegislature.org/Open/LDs/107/107-LD-2332.pdf

Amendment that passed H-1136:
http://lldc.mainelegislature.org/Open/LDs/107/107-LD-2332-HA_A_H1136.pdf

There is no debate in the Legislative Record for this bill.

creation of a private and public method for enforcing such rights "ill-advised" – contrary to the court's notions of good public policy, consideration of this "clarifying" amendment – in comparison to the prior versions of the MSPA -- belies the Court's conclusions about the Maine Legislature's public policy conclusions with respect to the benefits of such a statutorily mandated right for employees.

While Verso argued that the statement of legislative intent in the 1975 legislative history that the inclusion of a Director's action was intended to "take the place of many individual actions" indicated an intent to limit the right of enforcement and terminate pending actions, when the 1975 amendments are assessed in the context of the Legislature's repudiation of *Shapiro Shoe* and the radical nature of this "clarification" in law this language merely suggests an intent to provide an additional means of enforcement that would benefit many (but not all) employees impacted by a particular closure.

In 1979, the MSPA was repealed and reallocated in P.L. 1979, Chapter 663, Section 143 and 144.  After adoption of this bill the MSPA had its current statutory number 26 M.R.S.A. § 625-B.[7]

The 1981 amendments to the MSPA, merely amended the notice provisions to clarify the notice required in the event of an impending closure or relocation.[8]

---

[7] 1979, c. 663, §157 (NEW).

P.L. 1979, ch. 663, the session law
http://lldc.mainelegislature.org/Open/LDs/109/109-LD-1703.pdf

109th LD 1964, the original bill

109th ND 1703, the later draft

[8] P.L. 1981, ch. 337, the session law

One significant amendment, relevant to the public policy determinations that form the foundation of the current act, was made in 1989.[9]  The definition of employer was expanded to include parent companies, and this clarifying amendment was made retroactive to October 1, 1975, the date of the original post-*Shapiro Shoe* amendments.  P.L. 1989, c. 667.

In 1999, the legislature first adopted a minimum amount provision in the MSPA that mandated that in order to mitigate the severance pay liability in the MSPA, an employer had to have a written contract that provided for an amount of severance that was equal to or greater than the amount provided in the MSPA.  In the Summary of legislative intent it stated expressly that this amendment was intended to *prohibit* employers from negotiating an amount of severance lower than mandated by the MSPA.  P.L. 1999, c. 55.

> 3-A.   **Negotiated severance pay.**   This section does not apply to an employee covered by an express contract for severance pay f the contract provides for pay that is equal to or greater than the pay required in subsection 2.

### SUMMARY

> This bill prohibits employers from negotiating severance pay that is lower than that required for employees not covered by collective bargaining agreements.

These 1999 amendments are critical to review in determining the Maine Legislature's

---

http://lldc.mainelegislature.org/Open/Laws/1981/1981_PL_c337.pdf
110th LD 351, the original bill
H-350, the adopted amendment
Floor debate (p. 1201)


[9] 1989, c. 502, §A106 (AMD).

 P.L. 1989, c. 502, the session law
114th LD 1671, the original bill
S-344, the relevant adopted amendment


1989, c. 667, §§1,2 (AMD).
P.L.1989, c. 667, the session law
114th LD 1891, the original bill
S-500, the adopted amendment

14

resolution of competing public policy viewpoints of the merits of the MSPA and the decision, in 1999 and since, to prohibit the ability of employers to negotiate an amount of severance less than is required by the MSPA.  See, Ex. 1, excerpts from 1999 Legislative history.[10]  First, in 1999, a February 16, 1999 letter to the Legislature from Valerie R. Landry, then Maine Commissioner of Labor, revealed that in the past 3 fiscal years the Bureau of Labor Standards had collected more than $11 million in enforcing the MSPA.  (See Exhibit 1, p. 7 of 19)  This correspondence in the legislative history, connected to the legislatures debate regarding and decision to adopt a requirement that the severance amount required by the MSPA shall be a mandatory minimum for all eligible employees, without the right of employers to negotiate a lower amount, demonstrates a clear knowledge by the legislature that this law would result in large recoveries in the millions of dollars.  However, not in 1999 and not in any other year, has the Maine Legislature indicated any intent to adopt an interpretation of this law different from the FLSA, just because the sums to be collected are large – indeed, the statute is based on a recovery that focuses on the amount each individual will recover which is always in the thousands – thus, employing the FLSA and ADEA is completely consistent with this law.  The Court's focus on the aggregated sum as indicating an public policy reason for a different interpretation that mandated by Breuer, for the FLSA or ADEA is simply without support in the legislative history for this law.

Further, of not in this case where Verso has chosen to incur a significant severance liability by closing a mill rather than selling it as a going concern, in the 1999 debate, an argument was made in testimony submitted by the Maine Chamber and Business Alliance that the mandatory minimum severance payment liability may chill investors from saving a failing mill.  Specifically, the Chamber argued as follows:

---

[10]  The undersigned certifies that Exhibit 1 contains a true and correct copy of these excerpts from the 1999 Legislative history and were obtained from the Maine Legislative library.

Consider an investor contemplating the purchase of a failing plant.  Should the new potential employer be allowed to negotiate with the current employees, employees covered by collective bargaining about possible severance pay liability or not?  If the current employer is bankrupt or otherwise judgment proof, which is often the case, the employees might prefer to have a new employer come in and save their jobs.  They might be able to give the new employer a break on possible severance pay liability in order to encourage the new employer to save the plant.

It is certainly possible that some employees might not want to [wave] their severance pay rights, but we would argue that the parties should have the flexibility to negotiate these matters.  It is possible that a collective bargaining unit may wish to contract for more current wages and less than the statutory amount for severance pay.  We would argue that the employees and the employers have the right to decide for themselves how they want to take the employer's money.  It is certainly <u>possible</u> that employees may be more interested in current wage rates than possible future severance pay benefits.  Imposing a statutory minimum, no matter what the employer and the employee want, simply reduces employer and employee flexibility to work out a mutually satisfactory deal.

Our overall concern is if the Legislature says no to the negotiation of future severance pay liabilities, than more plants may fail without being rescued.  The bar to rescuing a failing plan[t] will simply be higher.  Typically, a new investor must make significant capital investment in a failing plant to attempt to revive it, but the new employer may not want to sign on for a larger potential severance pay obligation in the very real case that rescue efforts fails.

Ex. 1, Testimony of the Maine Chamber and Business Alliance in opposition to LD 476

An Act to Prohibit Severance Pay Lower than the State Minimum, p. 8-9 of 16.

The Maine Legislature's rejection of this argument in 1999 and decision to further extend the MSPA since that time demonstrates that the Court's reckoning regarding the proper public policy balance for the MSPA is not consistent with the public policy determinations actually adopted by the Maine Legislature.

The 2001 amendments merely required the adoption of implementing rules.[11]

The 2003 amendments to the MSPA adopted the clarifying language that has been the

---

[11] P.L. 2001, c. 625:
http://lldc.mainelegislature.org/Open/Laws/2001/2001_PL_c625.pdf

subject of much debate in this case, in which the Legislature included the phrase "and has been paid under the terms of" into 26 M.R.S.A. § 625-B, sub-§ 3.B.  This language was adopted to ensure that employees were "actually" paid.  The court never resolved this issue because it determined that the Plaintiffs' right to maintain their action was terminated upon the filing of the Director's action.  However, the inclusion of this language Plaintiffs continue to assert demonstrates the Legislatures intent to clarify that the time requirements in subsection 2, like the amount requirements, cannot be negotiated away.

In 2007, the Legislature adopted additional amendments clarifying the penalties in subsection 9 and the requirements and fines applicable for failure to provide the notice in subsection 6-A.[12]

In 2009, the Legislature adopted amendments adding the mass layoff provisions in subsection 10. [13]

In sum, the full legislative history for the MSPA demonstrates that the Maine Legislature has repeatedly and consistently expanded the right to severance pay, limited the ability of employers to negotiate an amount less than the statutorily mandated severance amount and clarified that this liability can only me mitigated by *actually paying* a sum that is equal to or greater than the amount mandated by Maine law.  Further, private enforcement is encouraged and rewarded through the requirement that costs and attorneys' fees are mandatory not

---

[12] 2007, c. 333, §§1, 2 (NEW).

P.L. 2007, c. 333, the session law
123rd LD 392, the original bill
H-391, the adopted amendment

[13]  2009, c. 305, §§1-4 (AMD).
2009, c. 305, §5 (AFF).

P.L. 2009, c. 305, the session law
124th LD 1469, the original bill
S-231, the adopted amendment

discretionary.

During debates regarding amendments which expanded the amount of severance and eliminated the right of employers to negotiate an amount less than the MSPA requires, the Maine Legislature has been unwavering in its rejection of claims that this statutory mandate will be bad for business or reduce flexibility in employer-employee bargaining.

Finally, this Court's determination that payment of attorneys' fees to litigants who file a subsection 4 private action prior to a Director's action is contrary to public policy and will encourage or reward "litigiousness" is utterly without support in the history of this statute over the past forty years of its evolution since the 1975 post-*Shapiro Shoe* amendments.  It is well settled that whenever a legislature or Congress alter the American rule by providing a fee shifting statute to reward private rights of action to enforce a statute, it evidences a clear legislating intent to encourage and reward enforcement through private attorneys general actions. Here, the fee award has been mandatory not discretionary since 1975.  At not point has there been any effort to amend the award of fees out of this statute or make it even permissive rather than mandatory.  For these reasons, Plaintiffs request that the Court reconsider its prior conclusions regarding the appropriate public policy determinations applicable to this statute.

Accordingly, Plaintiffs request that the Court reconsider its prior holding and either reverse the prior January 6, 2015 conclusions reached by this Court based on an incomplete legislative record; or, in the alternative, certify the relevant Maine law questions to the Maine Supreme Judicial Court, pursuant to 4 M.R.S.A. § 57; or in the alternative, certify the severance pay claims in Count 9 to the First Circuit Court of Appeals for interlocutory review, pursuant to 28 U.S.C.A. § 1292(b).

Dated this *20th*  Day of January, 2015.

                                Respectfully submitted,

                                */s/  Kimberly J. Ervin Tucker*

                                Kimberly J. Ervin Tucker

                                Maine Bar No. 6969

                                48 Harbour Pointe Drive

                                Lincolnville, Maine 04849

                                202-841-5439

                                k.ervintucker@gmail.com


                                */s/ Dana F. Strout*

                                Dana F. Strout, Esq.

                                Dana F. Strout, P.A.

                                Maine Bar No. 8239

                                270 West Street, Ste. B

                                Rockport, Maine 04856

                                207-236-0200

                                dfspcc@gmail.com


                                Donald I. Baker

                                Petitioner to Appear *Pro Hac Vice*

                                District of Columbia Bar No. 944124

                                Baker & Miller PLLC

                                2401 Pennsylvania Ave., NW

                                Suite 300

                                Washington, D.C. 20037

                                202-663-7820

                                DBaker@bakerandmiller.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th  day of January, 2015, a true and correct copy of the

foregoing was served upon the following individuals electronically by the CM/ECF system:

**David E. Barry**
Lead Litigation Counsel

Nolan L. Reichl
Litigation Counsel
PIERCE ATWOOD LLP
Merrill's Wharf
254 Commercial Street
Portland, ME 04101
P:  207-791-1376
F:  207-791-1350
dbarry@PierceAtwood.com

nreichl@pierceatwood.com


David Strock, Esquire
Verso Labor Counsel

Fisher & Phillips LLP
One Monument Square
Suite 600
Portland, Maine 04101
O:  207-774-6001
C:  207-650-3393
dstrock@laborlawyers.com


Clifford Ruprecht, Esquire
Lead Counsel for AIM Development (USA) LLC
Roach Hewitt Ruprecht Sanchez & Bischoff PC
66 Pearl Street
Portland, Maine  04101
O:  207-747-4870
cruprecht@rhrsb.com


Signed:        /s/  *Kimberly J. Ervin Tucker*